| In re | Case No. 06-00157 |
|---|---|
| KYUNG SUK KIM, | Chapter 7 |
| Debtor. | Re: Docket No. |

### MEMORANDUM OF DECISION ON MOTIONS FOR SANCTIONS[1]

The chapter 7 trustee and the debtor's and the estate's former special counsel have fought a series of running battles for nearly two years. Both sides have sought sanctions against the other for litigation misconduct. I have deferred all of those requests until the conclusion of the case. That date has arrived. For the reasons set forth below, I will impose sanctions on special counsel and deny sanctions against the trustee.

Statement of Facts

This case began on March 27, 2006, when the debtor, Mrs. Kim, filed a chapter 11 petition. Mrs. Kim filed her petition at least partly so she could contest a prepetition foreclosure sale of her property at 2016 Citron Street. On April 3, 2006, she filed an adversary proceeding against the mortgage lender to challenge

---

[1]The court has not selected this decision for publication.

the foreclosure. On the same day, she filed an application (docket no. 12) for authority to employ Sumida & Tsuchiyama, LLC, now known as Kevin Sumida & Associates, LLC, as her special counsel. The application (as amended, docket no. 26) stated that the firm would represent her in the adversary proceeding and in her other dealings with the Citron Street property. In support of the application, Kevin P.H. Sumida, a principal of the firm, signed a declaration (docket no. 13) in which he stated, under penalty of perjury, that his firm had not received a retainer from Mrs. Kim, that his firm was a "disinterested person" within the meaning of 11 U.S.C. § 101(13), and that, to the best of his knowledge, his firm did not represent any creditors of the estate and did not possess any adverse interest against the estate. In reliance on Mr. Sumida's statements, the court granted the application (docket no. 32).

Much later, it came out that Mr. Sumida's declaration was false.

Mrs. Kim settled her case against the Citron Street lender quickly. In summary, she got a chance to sell the property to another buyer for a higher price than the foreclosure sale had produced. The court approved the settlement on June 14, 2006 (docket no. 59). Unfortunately for Mrs. Kim, her buyer could not close the sale (see docket no. 61), so in the end she lost the property at a price that she considered low. She soon concluded that she could not complete a chapter 11

2

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 2 of 19

reorganization and converted her case to chapter 7 (see docket no. 66).

Ronald Kotoshirodo became the trustee of Mrs. Kim's estate. Some of the facts that Mr. Sumida had misstated or omitted began to emerge.

The trustee learned that Mr. Sumida[2] represented Mrs. Kim and her non-debtor husband in a state court lawsuit, filed just four days before the bankruptcy petition, against Mrs. Kim's brother, in which Mr. and Mrs. Kim sought to recover four valuable pieces of property. Mr. Sumida did not disclose this engagement to the bankruptcy court. His representation of Mr. Kim was inconsistent with his statement that his firm was disinterested and free from adverse interests. The trustee also discovered that the Kims had paid Mr. Sumida's firm a retainer. Mr. Sumida's statement in his declaration that his firm had not received a retainer was an outright falsehood.

The trustee also learned that, after the case was converted to chapter 7, Mr. Sumida had settled Mr. and Mrs. Kim's case against Mrs. Kim's brother, had received and disbursed a substantial amount of settlement proceeds, and had received attorneys' fees, all without prior disclosure to the trustee or court approval.

---

[2]References to "Mr. Sumida" in this decision include his law firm. It is not necessary to distinguish between Mr. Sumida and his firm. Fed. R. Bankr. P. 9011(c)(1)(A) ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.")

3

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 3 of 19

In the meantime, Mrs. Kim received her discharge on November 14, 2006 (docket no. 115).

After the facts came out, the trustee filed an adversary proceeding against Mr. and Mrs. Kim and Mrs. Kim's brother on November 13, 2007. The trustee sought to revoke Mrs. Kim's discharge and recover the settlement proceeds (adv. no. 07-90062). Later, on August 15, 2008, the trustee filed a separate adversary proceeding against Mr. Sumida and his law firm (adv. no. 08-90049), stating claims for negligence arising out of the undisclosed settlement.

The parties agreed to mediate their disputes. On August 28, 2008, the mediator reported (docket no. 32 in adv. no. 07-90062) that the parties had reached a settlement which was being documented. The mediator did a fine job in bringing the parties together. As soon as the mediator left the scene, however, the parties began to disagree about their agreement.

Although the trustee and his counsel worked diligently to resolve the remaining issues, Mr. Sumida and his counsel were unresponsive and dilatory. The court held a series of scheduling conferences in adv. no. 07-90062 in an effort to induce some progress.

On November 21, 2008, three months after the mediator reported the settlement, counsel orally stated the terms of the settlement on the record in court

U.S. Bankruptcy Court - Hawaii    #06-00157    Dkt # 202    Filed 01/14/10    Page 4 of 19

(see docket no. 11 in adv. no. 08-90049). In summary, Mrs. Kim's brother agreed to pay $3,000 and Mr. Sumida agreed to pay $20,000 to the estate, there would be a mutual release of claims among the parties, including the trustee in his official capacity, Mr. Sumida's claims against the trustee in his individual capacity would be reserved, and the two adversary proceedings would be dismissed with prejudice.

Contrary to the usual course of events, the settlement did not end the dispute. Mr. Sumida continued to drag his feet in completing the settlement. He and his counsel failed to respond to numerous inquiries from the trustee's counsel about the status of the settlement documentation. After another three months passed, on February 21, 2009, the trustee filed a motion (docket no. 12 in adv. no. 08-90049) to approve the settlement, enforce it against Mr. Sumida, and impose monetary sanctions.

In response to the trustee's motion (docket no. 15 in adv. no. 08-90049), Mr. Sumida did not attempt to explain or excuse his dilatory conduct. He argued that the settlement agreement should be revised to include other provisions that were necessary to carry out the terms orally stated on November 21, 2008.

I held that the form of agreement prepared by the trustee's counsel accurately reflected the agreement stated on the record (except for a severability provision which I ruled should be deleted) and that Mr. Sumida's form did not. I

5

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 5 of 19

declined to award sanctions provided that Mr. Sumida and the other settling defendants signed the agreement and paid the settlement amount by April 10, 2009 (docket no. 18 in adv. no. 08-90049.) Mr. Sumida apparently complied with this deadline.

Even a signed settlement agreement was not enough to dissuade Mr. Sumida. On April 7, 2009, Mr. Sumida filed[3] a motion in the main case to approve and enforce the settlement (docket no. 157). The motion concerned a provision of the settlement agreement that required the trustee to sign such documents as may be required to preserve Mr. Sumida's claims against the trustee, in his individual capacity. Mr. Sumida argued, and the trustee acknowledged, that, under Hawaii law, the trustee had to release the estate's claims against him in his individual capacity in order to preserve Mr. Sumida's claims against the trustee individually. The trustee correctly pointed out, however, that Mr. Sumida's proposed release went well beyond the requirements of the settlement agreement, and he renewed his request for sanctions. In an effort to terminate the dispute, I drafted a release, directed the parties to sign it, and again deferred the issue of sanctions (docket no. 171).

---

[3]Up to this point, retained counsel represented Mr. Sumida and his firm. Beginning with this motion, Mr. Sumida began to represent himself and his firm. A formal withdrawal and substitution of counsel was filed on April 22, 2009 (docket no. 22 in adv. no. 08-90049).

6

While Mr. Sumida's motion to enforce the settlement was pending, on April 22, 2009, Mr. Sumida filed a motion for leave to assert a third party complaint against Mr. Kotoshirodo individually in adv. no. 08-90049 (docket no. 20). This request flew in the face of the unambiguous provision of the settlement agreement that called for dismissal of that adversary proceeding. The trustee opposed this motion and countermoved (docket no. 27) for dismissal of the adversary proceeding and for sanctions. I denied Mr. Sumida's request for leave to file a third party complaint and granted the trustee's motion to dismiss because the approved settlement called for dismissal of, and not the assertion of new claims in, that case. I denied the request for sanctions, without prejudice to any parties' claims for sanctions in any other litigation to which they were parties.

Also while Mr. Sumida's motion to enforce the settlement was pending, Mr. Sumida filed a motion in the main case (docket no. 165) to remove the trustee and his attorney, for a determination that the trustee had breached the settlement agreement, for restitution of the settlement amount that Mr. Sumida had paid, and for attorneys' fees and costs. The trustee countermoved for sanctions. In a written decision, I denied the motion in its entirety (docket no. 182). I held that Mr. Sumida had breached the settlement agreement, not the trustee, that Mr. Sumida probably lacked standing to seek removal of the trustee, and that there was no

7

reason to remove the trustee or his attorney. I denied Mr. Sumida's request for restitution and sanctions because the trustee did nothing wrong and the request for restitution was procedurally improper. I denied the trustee's request for sanctions "at this juncture." I stated that Mr. Sumida's motion was meritless and was probably filed for the improper purpose of extracting a settlement from the trustee in his individual capacity, but that the trustee had not complied with the "safe harbor" procedure of Fed. R. Bankr. P. 9011(c)(1)(A) and that it would be more appropriate to consider inherent power sanctions later in the litigation.

The latest round of this prizefight began when the trustee's counsel filed an application for final compensation and reimbursement (docket no. 185), a prerequisite to closing this case. Mr. Sumida opposed the application (docket no. 186). The trustee's counsel responded to the objection and filed motions for sanctions under rule 9011 (docket no. 188) and the court's inherent powers (docket no. 192). Mr. Sumida countermoved for sanctions (docket no. 197).

## Legal Standards

### *Rule 9011, Fed. R. Bankr. P.*

Rule 9011 of the Federal Rules of Bankruptcy Procedure authorizes the bankruptcy court to impose sanctions. The purpose of rule 9011 is to insure that what is submitted to the court by the attorneys or a *pro se* party is truthful and

8

properly brought for litigation purposes. In re DeVille, 361 F.3d 539, 543 (9th Cir. 2004). Rule 9011, Fed. R. Bankr. P. states in part:

> **(b) REPRESENTATIONS TO THE COURT**. By presenting to the court (whether by signing filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and believe, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The court can impose sanctions for violations of rule 9011(b) through a motion or on the court's own initiative.[4] Because the language of rule 9011(a) is

---

[4] Rule 9011(c) provides as follows:

> (c) **SANCTIONS**. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to

9

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 9 of 19

basically the same as rule 11 of the Federal Rules of Civil Procedure, courts use rule 11 decisions to interpret rule 9011. In re Grantham Bros., 922 F.2d 1438, 1441 (9th Cir. 1991).

A party may seek reasonable fees and costs as a rule 9011 sanction only by filing a separate motion. In re Deville, 361 F.3d 539, 544 (9th Cir. 1994). Furthermore, the moving party must serve the unfiled motion on the offending party 21 days before filing the sanctions motion, giving the offending party a "safe harbor" period to correct or withdraw the sanctionable paper. Fed. R. Bankr. P. 9011(c)(1)(A); In re Markus, 313 F.3d 1146, 1151 (9th Cir. 2002).

Sanctions issued under rule 9011 are discretionary. In re Grantham Bros, 92 F.2d at 1441 n.2. When determining whether to impose sanctions, the court "must consider both frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." In re Silberkraus, 336 F.3d 864, 870 (9th Cir. 2003) (quoting In re Marsch, 36 F.3d 825, 830 (9th Cir. 1994)).

An assertion is frivolous if it is "both baseless and made without a reasonable and competent inquiry." In re Grantham Bros., 922 F.2d at 1442

---

the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

10

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 10 of 19

(quoting Townsend v. Holman Consulting Corp., 914 F.2d 1136, 1140 (9th Cir. 1990)). It is also one that is "legally unreasonable, or without legal foundation." Id. (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986)).

*Inherent Power*

If a rule or statute does not adequately compensate a party for the other's bad faith conduct, the court can rely on its inherent equitable powers to impose sanctions. In re DeVille, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002), *aff'd* 361 F.3d 539 (9th Cir. 2004) (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991) and In re Rainbow Magazine,Inc., 77 F.3d 278, 283 (9th Cir. 1996)). Section 105(a) of the Bankruptcy Code simply affirms this inherent power, which comes from the "very creation of the court." In re Dyer, 322 F.3d 1178, 1196 (9th Cir. 2003). The inherent power to sanction gives the bankruptcy court the authority to impose sanctions "to deter and provide compensation for a broad range of improper litigation tactics." Id. (citing Fink v. Gomez, 239 F.3d 989, 992-93 (9th Cir. 2001)). This power allows the "courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hale v. U.S. Trustee, 509 F.3d 1139, 1148 (9th Cir. 2007) (quoting In re Rainbow Magazine, Inc., 77 F.3d at 283.).

In order for the court to exercise its inherent sanctioning powers, however, the court must make an explicit finding of bad faith or willful misconduct. In re

11

Dyer, 322 F.3d at 1196 (citing Fink v. Gomez, 239 F.3d at 992-93). The misconduct must be more "than mere negligence or recklessness." In re Lehtinen, 564 F.3d 1052, 1058 (9th Cir. 2009) (quoting Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1197 (9th Cir. 2003)). Bad faith can be found where a party delays or disrupts the litigation. United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Service Workers Intern. Union v. Shell Oil Co., 549 F.3d 1204, 1209 (9th Cir. 2008) (citation omitted). Inherent power sanctions do not require a finding that "the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorneys' fees." In re Itel Securities Litigation, 791 F.2d 672, 675 (9th Cir. 1986) (quoting Lipsig v. National Student Marketing Corp., 663 F.2d 178, 182 (D.C. Cir. 1980)).

Discussion

*Sumida's Countermotion for Sanctions*

Mr. Sumida's countermotion for rule 9011 sanctions must be denied. Mr. Sumida has failed to comply with the requirements of rule 9011(c): he did not file a separate motion; he did not serve the motion on the respondents 21 days before filing it; and the motion does not describe the specific conduct which allegedly violated the rule. He has offered no explanation or excuse for these failures.

12

Moreover, because Mr. Sumida failed to comply with rule 9011(c), the countermotion was not warranted either by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law or to establish new law. The countermotion is therefore sanctionable under rule 9011(b).

### *Effect of Settlement Agreement*

Mr. Sumida argues that, pursuant to the settlement agreement, the trustee broadly released all of the trustee's claims against Mr. Sumida. According to Mr. Sumida, this includes all of the trustee's claims for sanctions based on acts done many months after the settlement was made. This is an unreasonable interpretation of the settlement agreement. Although the release encompasses all claims based on conduct prior to the settlement agreement, there is no reason to believe that the trustee intended to grant Mr. Sumida perpetual blanket immunity from sanctions for future misconduct. Further, the release does not limit the court's independent power to impose sanctions. Therefore, the settlement agreement does not bar the trustee's claims for sanctions based on conduct occurring after the settlement was made and does not limit the court's independent power to impose sanctions.

### *Trustee's Motion for Rule 9011 Sanctions*

The trustee seeks rule 9011 sanctions against Mr. Sumida for his opposition to the final fee application. The trustee argues that the opposition lacked an

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 13 of 19

adequate legal basis because the objectors released all of their claims against the estate and therefore did not have standing to oppose the fee application. Only a "party in interest," meaning someone with a pecuniary interest in the estate, can object to claims and administrative expenses. Compare In re Stoll, 252 B.R. 492 495 n.4 (B.A.P. 9th Cir. 2000). Mr. Sumida responds to this in several ways.

*First*, he rehashes his complaints about the trustee's conduct. I have previously heard and rejected all of these complaints, and in any event they have nothing to do with Mr. Sumida's standing to raise them.

*Second*, he argues that he has post-settlement claims for sanctions, and that these claims are sufficient to confer standing upon him. This argument fails. I have already denied all of Mr. Sumida's sanctions requests, and he did not appeal those orders. To say that his latest countermotion for sanctions gives him standing is bootstrapping of the most blatant form and would eviscerate the standing requirement. Further, his requests for sanctions are claims against the trustee and his counsel in their individual capacities. Even if sanctions were awarded, neither the trustee nor his counsel would be able to shift the burden to the estate. Thus, the sanctions requests, even if they had merit (which they do not), would not give Mr. Sumida a right to payment from the estate and therefore do not give him standing to complain about the disbursement of estate funds.

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 14 of 19

*Third,* Mr. Sumida claims that the trustee and his counsel made a misrepresentation to the court and that, as an officer of the court, Mr. Sumida has standing to bring the alleged misrepresentation to the court's attention. There was no misrepresentation; counsel correctly told the court that, because the estate did not have enough money to pay the administrative expenses already incurred, the trustee and his counsel were working for free.[5] Even if there were a misrepresentation, however, an attorney's obligation to report misconduct does not give the attorney standing to appear and be heard in a case as a party.

The trustee also argues that the objectors presented their paper for the improper purpose of harassing the trustee, increasing the fees for the trustee and his counsel which the estate cannot pay, and unnecessarily delaying the closing of this case. I agree. Because Mr. Sumida has no more claims against the estate, the grant or denial of the compensation application would have no economic effect on him. The only reasons he objected was to to continue his vendetta against the trustee and his counsel and to attempt to avenge himself.

Therefore, I will grant the trustee's motion and award, as a sanction, the attorneys' fees and costs that the trustee reasonably incurred in responding to Mr.

---

[5]I inadvertently created confusion by misquoting the trustee's counsel. In a memorandum of decision, I stated that the trustee and his attorney would not charge the estate for their services. That is not what counsel said: he said that he and his client would not be paid for their services due to a lack of funds.

15

Sumida's meritless objection and countermotion for sanctions and bringing the trustee's motion under rule 9011.

### *Sanctions Under Inherent Powers*

Rule 9011 does not permit sanctions for any of Mr. Sumida's other conduct because the trustee did not comply with the "safe harbor" requirements of rule 9011(c). This does not limit the court's authority to employ its inherent sanctioning powers for any bad faith or willful misconduct.

To determine whether inherent power sanctions are appropriate, it is helpful to analyze the case in segments.

<u>Conduct Prior to Settlement</u>. I will not impose sanctions for any conduct before the parties placed the terms of the settlement on the record on November 21, 2008. Although I agree with the trustee's assertion that Mr. Sumida unreasonably delayed the implementation of the settlement which the mediator reported three months earlier, I do not think that his conduct was so severe as to warrant inherent power sanctions.

<u>Conduct Prior to Settlement Approval</u>. Similarly, I will not impose inherent power sanctions for conduct occurring after the settlement was placed on the record and before the order approving it was entered on April 8, 2009. I do not condone Mr. Sumida's dilatory behavior or his advocacy of a draft settlement

agreement which did not accurately state the agreement placed on the record. But I stated that there would be no sanctions if Mr. Sumida signed the agreement and paid the settlement money by a date certain, and Mr. Sumida complied with that deadline. Further, I cannot conclude that Mr. Sumida, during this period, acted in bad faith or that his misconduct was willful. The parties' statements on November 21, 2008, showed that there was some uncertainty about the exact scope of the releases. Although Mr. Sumida could and should have acted more swiftly and his proposed releases went beyond what the parties contemplated, his conduct was not so bad as to warrant inherent power sanctions.

Attempt to File Third Party Complaint. I will impose inherent power sanctions against Mr. Sumida for filing the motion for leave to file an amended answer and third party complaint (docket no. 20 in adv. no. 08-90049). Mr. Sumida's motion was utterly without merit. Mr. Sumida must have known that his motion was an indefensible breach of the settlement agreement. His only response was that asserting new claims in the old adversary proceeding would be more efficient than filing an independent action. But he was not entitled to breach the contract just because he wanted to save time or money. Because Mr. Sumida's filing of the motion was willful misconduct and was done in bad faith, the trustee is entitled to recover reasonable attorneys' fees and costs incurred in opposing that

17

motion and prosecuting the trustee's countermotions.

Mr. Sumida is also contractually liable for those fees. Paragraph 5 of the settlement agreement (docket no. 164) provides that, if any party breaches the agreement, "the non-breaching party . . . may recover attorney's fees and costs in addition to any other damages incurred by such breach." Mr. Sumida breached the settlement agreement when he refused to stipulate to the dismissal of the adversary proceedings unless the trustee stipulated to his assertion of new claims in that proceeding. Therefore, the trustee is contractually entitled to recover the fees and costs he incurred in opposing Mr. Sumida's motion for leave to file an amended answer and third party complaint in the adversary proceeding and prosecuting the trustee's countermotions.

Attempt to Remove Trustee. I conclude that Mr. Sumida filed the motion to remove the trustee and for other relief in bad faith. The motion had no merit. See Memorandum of Decision on Motion to Remove Trustee and for Other Relief, filed July 14, 2009 (docket no. 182). By the time Mr. Sumida filed the motion, he had signed the settlement agreement and released all of his claims against the estate. Thus, when he filed the motion, he had no pecuniary interest in the estate and no standing to seek removal of the trustee. Further, he must have known, at least by the time of the hearing, if not when he filed the motion, that he could not

18

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 18 of 19

seek monetary damages ("restitution" of his settlement payment) by filing a motion rather than commencing an adversary proceeding. He filed this meritless motion, and accompanied it with a barrage of threatening communications, in an improper effort to "up the ante" and bully the trustee into a settlement. This is precisely the kind of bad faith, willful misconduct which the court has inherent power to sanction. The trustee should recover the reasonable attorneys' fees and costs incurred in responding to this motion.

## *Conclusion*

Mr. Sumida has engaged in a long pattern of misconduct which warrants sanctions. I repeatedly attempted to dissuade him from future misconduct by pointing out his errors and deferring the trustee's requests for sanctions, but he persisted. Mr. Sumida and his firm must be jointly sanctioned to compensate the trustee and the estate for Mr. Sumida's misconduct and to deter him from future misconduct.

The trustee's counsel shall file a declaration and supporting evidence of the reasonable amount of fees and costs in the categories described above within fourteen days from the entry of this decision. Mr. Sumida shall have seven days after the trustee's filing to file a response.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **01/14/2010**

19

U.S. Bankruptcy Court - Hawaii   #06-00157   Dkt # 202   Filed 01/14/10   Page 19 of 19